COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

James D. WENGER, Respondent.

No. 91–01.

Supreme Court of Iowa.

May 15, 1991.

Mark W. Bennett of Babich, Bennett & Nickerson, Des Moines, for appellant.

James E. Gritzner and Thomas W. Foley of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

ANDREASEN, Justice.

Attorney James D. Wenger appeals from the recommendation of the Grievance Commission of the Supreme Court of Iowa (commission) that his license to practice law in Iowa be revoked. Wenger admits his conduct was in violation of EC 1–5 and DR 1–102(A)(1), (3), (4) and (6) of the Iowa Code of Professional Responsibility for Lawyers. On appeal he urges disbarment is an unduly harsh sanction for his misconduct. On our de novo review we suspend his license to practice law in Iowa.

Wenger admits that at a prior disciplinary hearing before the commission he falsely testified and offered a false document.

It should not be necessary for us to stress that "[f]undamental honesty is the base line and mandatory requirement to serve in the legal profession." *Committee on Professional Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990). Attorneys must conduct themselves with honesty and truthfulness, and should avoid statements or actions that are calculated to deceive or mislead. *Committee on Professional Ethics & Conduct v. Hurd*, 325 N.W.2d 386, 390 (Iowa 1982). We have long recognized the fundamental duty of

attorneys to bring "truth to light." *Committee on Professional Ethics & Conduct v. Crary*, 245 N.W.2d 298, 305 (Iowa 1976). A lawyer who engages in conduct involving dishonesty violates a fundamental ethics canon. *See* Iowa Code of Prof.Resp. DR 1–102(A)(4). We recognize "[o]ur profession has no place for persons who demonstrate a penchant for distorting the truth." *Committee on Professional Ethics & Conduct v. Postma*, 430 N.W.2d 387, 392 (Iowa 1988).

It clearly is an ethical violation to lie to a client, *Committee on Professional Ethics & Conduct v. Havercamp*, 442 N.W.2d 67, 70 (Iowa 1989), opposing counsel, *Hurd*, 325 N.W.2d at 390, the court, *Committee on Professional Ethics & Conduct v. Seff*, 457 N.W.2d 924, 927 (Iowa 1990), or other persons. *Committee on Professional Ethics & Conduct v. Hall*, 463 N.W.2d 30, 35 (Iowa 1990). It is also an ethical violation to lie to the Committee on Professional Ethics & Conduct of the Iowa Bar Association (committee), *Hall*, 463 N.W.2d at 35, the Client Security & Attorney Disciplinary Commission (client security), *Committee on Professional Ethics & Conduct v. Baudino*, 452 N.W.2d 455, 458 (Iowa 1990), or the commission. *Committee on Professional Ethics & Conduct v. Shifley*, 390 N.W.2d 133, 134 (Iowa 1986). *See also* annotation *Fabrication or Suppression of Evidence as Ground for Disciplinary Action Against Attorney*, 40 A.L.R.3d 169 (1971).

Our task is to determine an appropriate sanction under the particular circumstances of this disciplinary proceeding. The commission recommended revocation of Wenger's license to practice law. The commission is made up of lawyers from each judicial district, appointed by the president-elect of the Iowa State Bar Association, and laypersons appointed by this court. Iowa Sup.Ct.R. 118.1. The commission or a division thereof holds hearings and receives evidence concerning ethical violations. *Id.* At the conclusion of the hearing the commission may dismiss the complaint or may report to this court, in writing, its findings of fact, conclusions of law, and recommendations. Iowa Sup.Ct.R. 118.9. Upon our de novo review, we give respectful consideration to the recommendations of the commission, but we are not bound by them. *Seff*, 457 N.W.2d at 925. We may impose a lesser or greater sanction than the discipline recommended by the commission. Iowa Sup.Ct.R. 118.10.

We suspended Wenger's license to practice on April 18, 1990, because he failed diligently to pursue a matter entrusted to him and because he did not cooperate with an investigation of the complaint. *Committee on Professional Ethics & Conduct v. Wenger*, 454 N.W.2d 367 (Iowa 1990). At the second disciplinary hearing, the commission found that Wenger had fabricated evidence and had given false testimony while under oath at the initial disciplinary hearing. He did not admit his misconduct until after his appeal had been decided and a second formal complaint had been filed by the committee. The commission concluded his conduct was dishonest and deceitful, prejudicial to the administration of justice and adversely reflected upon his fitness to practice law. Wenger does not challenge the commission's findings and conclusions; he challenges only the recommendation of disbarment.

Disbarment may be the appropriate sanction when false testimony or false instruments are offered to the committee, the commission, or the court if combined with other serious ethical violations. *See Hall*, 463 N.W.2d at 30; *Shifley*, 390 N.W.2d at 133; *Committee on Professional Ethics & Conduct v. Hurd*, 375 N.W.2d 239 (Iowa 1985); *Committee on Professional Ethics & Conduct v. Randall*, 285 N.W.2d 161 (Iowa 1979); *Crary*, 245 N.W.2d at 298.

Under other circumstances a reprimand or suspension may be the appropriate sanction for false testimony or providing false instruments or affidavits. *See Committee on Professional Ethics & Conduct v. O'Donohoe*, 426 N.W.2d 166 (Iowa 1988) (Deliberate misstatement of true facts; falsely dated deed. Attorney reprimanded.); *Committee on Professional Ethics & Conduct v. Roberts*, 312 N.W.2d 556 (Iowa 1981) (Attorney misled the court by filing an affidavit with a false signature on it.

Attorney reprimanded.); *Committee on Professional Ethics & Conduct v. McCullough,* 465 N.W.2d 878 (Iowa 1991) (Permitted client to execute documents containing known untruths which were compounded when attorney took confession of judgment that contained material misstatements. Attorney suspended twelve months.); *Bauerle,* 460 N.W.2d at 452 (Falsified documents for client. Attorney license suspended for six months.); *Seff,* 457 N.W.2d at 924 (Knowingly used perjured testimony and false evidence. Attorney suspended two years.); *Postma,* 430 N.W.2d at 387 (Distortion of the truth. Attorney suspended six months.); *Committee on Professional Ethics & Conduct v. Davidson,* 398 N.W.2d 856 (Iowa 1987) (Numerous violations including misrepresentation in claim for compensation, submitting false information in estate final report, submitting to court an order containing false information, and allowing filing of final report known to contain misrepresentations. Attorney suspended two years.); *Committee on Professional Ethics & Conduct v. Hurd,* 360 N.W.2d 96 (Iowa 1984) (Motion for change of judge contained a number of palpably false statements. Attorney suspended six months.); *Committee on Professional Ethics & Conduct v. West,* 387 N.W.2d 338 (Iowa 1986) (Knowingly provided false signatures on documents for notarization. Attorney suspended twelve months.); *Committee on Professional Ethics & Conduct v. Brodsky,* 318 N.W.2d 180 (Iowa 1982) (Explanations to commission replete with inconsistencies and falsehoods. Attorney suspended three years.); *Hurd,* 325 N.W.2d at 386 (Excising three lines of a court document and other deception. Attorney suspended sixty days.); *Committee on Professional Ethics & Conduct v. Wilson,* 270 N.W.2d 613 (Iowa 1978) (False and misleading statements of fact to a panel of judges. Attorney suspended six months.).

We often impose the penalty of suspension as the sanction for failing to file timely income tax returns combined with the furnishing of false statements on the client security questionnaire. *See Committee on Professional Ethics & Conduct v. Ol-*

*trogge,* 463 N.W.2d 19, 20 (Iowa 1990); *Baudino,* 452 N.W.2d at 458.

■ The sanctions for false testimony or the use of false documents thus depends on the severity of the violation. Both aggravating and mitigating circumstances are considered in determining the appropriate sanction.

The commission properly considered Wenger's prior suspension. Prior disciplinary proceedings bear upon the attorney's character. We do not ignore this evidence. *See Hurd,* 360 N.W.2d at 105.

Wenger ignored the committee's request for a reply to the complaint that he had offered false evidence at the commission hearing. It was a separate ethical violation for him to ignore the committee's request for a reply to its disciplinary complaint. *Committee on Professional Ethics & Conduct v. Gardalen,* 414 N.W.2d 124, 128–29 (Iowa 1987). Both the prior suspension and the failure to cooperate are aggravating factors.

Wenger offered mitigating evidence at the disciplinary hearing. Letters from several lawyers and members of his community expressing their support were submitted. The county attorney and a practicing attorney who had frequent dealings with Wenger testified as to his good reputation and character for honesty, truthfulness and integrity. Others testified his conduct before the commission was an "aberration" totally uncharacteristic of him. His misconduct was an isolated event.

Wenger also offered evidence of his emotional problems and the stress that contributed to his unusual conduct. Wenger's workload increased substantially in January of 1989 when his law practice was transformed from a two-lawyer to a sole practitioner office by reason of his father's retirement. Also, in January of 1989, Wenger's wife gave birth to their first child. A month or two after the child was born his wife experienced significant depression and was hospitalized. Wenger then became primarily responsible for the care of the child. The initial complaint which had been

filed in the fall of 1988 was heard by the commission on July 11, 1989. Wenger contacted a psychiatrist in November of 1989. The psychiatrist found Wenger had a depressive disorder, and Wenger was treated with antidepressant medications and therapy. In the psychiatrist's opinion, Wenger can now practice law responsibly.

■ We do not recognize an attorney's emotional problems, personality disorders or the stress of a law practice as an excuse for unethical conduct. *Committee on Professional Ethics & Conduct v. Robinson*, 458 N.W.2d 393, 394 (Iowa 1990). However, we do consider these circumstances when determining an appropriate sanction. *Id.*

■ Wenger practiced law in Iowa for thirteen years without a disciplinary complaint. His reputation and character for honesty was excellent. He realizes the seriousness of his misconduct and agrees a lengthy suspension would be appropriate. His license to practice law has been suspended since April 18, 1990.

Under these circumstances, we extend the suspension of his license to practice law indefinitely, with no possible reinstatement for three years from the filing of this decision and order. Any application for reinstatement shall be governed by rule 118.13.

It is further ordered that the cost of this action be assessed against Wenger. Iowa Sup.Ct.R. 118.22.

LICENSE SUSPENDED.

All Justices concur except HARRIS, J., who dissents and is joined by SNELL, J.

HARRIS, Justice (dissenting).

I respectfully dissent. The fraud perpetrated by respondent demonstrates an unfitness to practice. I would uphold the recommendation of the commission and revoke Wenger's license to practice.

SNELL, J., joins in this dissent.